JAMES M. BRADEN (State Bar No. 102397)
601 Montgomery Street, Suite 315
San Francisco, CA 94111
Telephone: (415) 398-6865
Facsimile: (415) 788-5605
Email: Braden@sf-lawyer.com

Attorney for Plaintiff Ellen Williams

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN WILLIAMS, also known as ELLEN GIRMA, an individual,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF PLEASANTON, CALIFORNIA;<br><br>POLICE DEPARTMENT OF THE CITY OF PLEASANTON, CALIFORNIA;<br><br>AND THE FOLLOWING INDIVIDUALS:<br><br>KATIE EMMET<br>ANTHONY PITTL<br>BARRY BOCCASILE<br>MICHAEL BRADLEY<br>ARIANNA WELCH FRANGIEH<br>ANITA GIRARD<br>MEGHAN CLAIRE RAMSEY<br>DIANE DEL ROSARIO ESTRADA<br>EMILY NITRO<br>FRANS HIBMA;<br><br>and DOEs, 1 through 100, inclusive,<br><br>　　　　　　Defendants | Civil Case No.: 3:20-cv-08720-LB<br><br>**PLAINTIFF ELLEN WILLIAMS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS**<br><br><br>**DATE, TIME, AND DEPARTMENT TO BE DETERMINED AFTER ARTICLE III DISTRICT JUDGE IS ASSIGNED TO THE CASE** |

**20-8720: PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO MOTION TO DISMISS**

# I.

# SUMMARY OF ARGUMENT

(1) The better reasoned of the two lines of competing authority is that both a Californian government entity and a police agency existing within it may be named as separate defendants.

(2) Plaintiffs are entitled to obtain Discovery relating to their <u>Monell</u> policies-and-procedures claims before the Court dismisses them.

(3) The pleadings from <u>John Bauer v City of Pleasanton</u> amply demonstrate that the City and its Police have a relevant history of excessive use of police force that we could plead if the Court is inclined to require us to file an amended complaint now.

(4) Ellen Williams presents in her accompanying Declaration, which could be Incorporated into an amended complaint, specific evidence of racist actions and conduct by the Pleasanton police officers.

# II.

# BOTH THE CITY OF PLEASANTON AND THE PLEASANTON POLICE DEPARTMENT ARE APPROPRIATE DEFENDANTS TOGETHER IN THIS CASE

The Pleasanton Defendants are correct that one line of authority does indicate that the City of Pleasanton and the Police Department of Pleasanton cannot or should not both be named as a defendant because the police are merely an agency, not a "person" who can be sued. But Defendants fail to advise the Court that there is a contrary line of authority which indicates exactly the opposite, i.e. that a Californian government entity and a police agency within it may continue as separate defendants.

Defendants' line of authority is flawed because those courts misconstrued controlling 9th Circuit authority, as the Court explained in great detail in <u>Osuna v. County of Stanislaus</u>, 392 F.Supp.2d 1162, 1171 (E.D. Cal. 2019).

> The somewhat more complicated question is whether the Stanislaus County Sheriff's Department is a "person" within the meaning of 42 U.S.C. § 1983 and may be properly named as a defendant as to claim brought pursuant to that provision. In seeking dismissal, defendants cite to a concurring opinion in *United States v. Kama*, 394 F.3d 1236 (9th Cir. 2005) (Ferguson, J., concurring)[1], which stated that "municipal police departments and bureaus are generally not considered 'persons' within the meaning of 42 U.S.C. § 1983." 394 F.3d 1236, 1239–40. Defendants misconstrue this opinion. In reaching that conclusion, the concurring opinion cited to the Ninth Circuit's decision *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995), which held that the Tacoma Narcotics Enforcement Team was not a "person" under § 1983 because it was an intergovernmental task force composed of several local, county, and state governmental entities, rather than a separate legal entity unto itself. 65 F.3d 784, 791–92 (9th Cir. 1995). Because this case includes claims against a sheriff's department, and not an intergovernmental association, the court finds *Hervey* to be of only limited guidance. Moreover, the concurring opinion in *Kama* also relied upon an Eleventh Circuit decision in *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992), which found that because the county sheriff's department lacked the capacity to be sued *under Alabama law*, it could not be sued under § 1983. However, California law is to the contrary. *See Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are 'public entities' under California law and, hence, can be sued in federal court for alleged civil rights violations.").
>
> More recently, the Ninth Circuit has permitted an action under § 1983 to proceed against a California sheriff's department notwithstanding the department's contention that it is not a "person" within the meaning of § 1983. *Streit v. County of Los Angeles*, 236 F.3d 552, 564–65 (9th Cir. 2001) (affirming the district court's holding that when the Los Angeles County Sheriff's Department acts on behalf of the County, it is subject to liability under 42 U.S.C. § 1983); *see also Brewster v. Shasta County*, 275 F.3d 803, 807 (9th Cir. 2001) (finding that the Shasta County Sheriff is subject to liability under § 1983 after concluding that the "Shasta County Sheriff acts for the County, not the state, when investigating crime in the county"). The undersigned concludes that these binding decisions control resolution of this issue, and therefore will deny defendants' motion to dismiss the Stanislaus County Sheriff's Department as a defendant in this action.[2]

The Court's footnote 2, which it dropped at the end of the foregoing, is instructive because it expands on the existence of conflicting lines of authority on this question:

> The court acknowledges that numerous district courts within the Ninth Circuit have ruled that sheriff's departments and police departments are not "persons" within the meaning of § 1983, and have dismissed them as defendants on that

basis. *See, e.g.*, *Pearson v. Bakersfield Police Dep't*, No. 1:18-cv-0372-LJO-JLT, 2018 WL 3198065, at *5 (E.D. Cal. June 27, 2018); *Cartee v. Imperial Cty. Sheriff's Dep't*, No. 3:18-cv-00327-CAB-AGS, 2018 WL 2411742, at *3 (S.D. Cal. May 29, 2018) ("[D]epartments of municipal entities are not 'persons' subject to suit under § 1983; therefore, a local law enforcement department (like the Imperial County Sheriff's Department) is not a proper party."); *Anderson v. Sacramento Police Dep't*, No. 2:16-cv-0527, 2016 WL 3091162, at *4 (E.D. Cal. June 2, 2016) (same); *Gomez v. County of Fresno*, No. 1:16-cv-00122-AWI-BAM, 2016 WL 8730877, at *2 (E.D. Cal. Feb. 12, 2016) (same); *Rodriguez v. County of Contra Costa*, No. C 13-02516 SBA, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5, 2013) (same); *Gonzales v. City of Clovis*, No. 1:12-cv-00053-AWI, 2013 WL 394522, at *13 (E.D. Cal. Jan. 30, 2013) ("The Clovis Police Department is a municipal department within the City of Clovis, and is not, as a general matter, considered a 'person' within the meaning of Section 1983."). The undersigned has considered these decisions but comes, as have other district courts, to the opposite conclusion. *See, e.g.*, *Payne v. County of Calaveras*, No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347, at *3 (E.D. Cal. Dec. 14, 2018); *Olvera v. County of Sacramento*, 932 F. Supp. 2d 1123, 1172 n.17 (E.D. Cal. 2013); *Foster v. Berkeley Police Dep't*, No. C 10-3703 SI, 2011 WL 5861266, at *11 (N.D. Cal. Nov. 22, 2011).

Other cases holding that a government entity and a police agency existing within it can continue as separate defendants include <u>Cantu v. Kings County</u>, 2021 WL 859428 (E.D. Cal.); <u>Tennyson v. County of Sacramento</u>, 2020 WL 4059568 (E.D. Cal. 2020); and <u>Valenzuela v. San Diego Police Department</u>, 2020 WL 804923 (S.D. Cal.).

We respectfully submit that the foregoing is the more persuasive and better reasoned of the two lines of authority, so that the City of Pleasanton and the Police Department of Pleasanton should continue as separate named Defendants.

## III.

## **PLAINTIFFS ARE ENTITLED TO DISCOVERY BEFORE DISMISSAL**

Defendants say that our allegations of government entity liability under <u>Monell</u> for the misconduct of the four Pleasanton police officer defendants are too general and that we do not allege any specific prior incidents that might be evidence of a course of conduct or a pattern that

4

**20-8720: PLAINTIFF'S MEMORANDUM
IN OPPOSITION TO MOTION TO DISMISS**

would amount to a culpable "policy". In fact, there is indeed a disturbing recent series of cases involving excessive use of force by Pleasanton police officers, which we describe below. We could add these to the amended complaint we should be allowed to file if the Court is inclined to grant the Motion to Dismiss.

We submit, however, that this exercise is unnecessary, at least at this stage, because the Motion to Dismiss should be denied outright, not granted with leave to amend. Although we are already aware of previous misconduct events that constitute a pattern, we should be allowed to conduct Discovery and further investigation outside of Discovery in order to learn other incidents, or facts relating to management of the Pleasanton Police Department. Once that discovery is complete, it would be appropriate for us to file an amended complaint that sets forth all the specifics mentioned below and any new ones that we have by then learned.

Judge John Mendez of the U.S. District Court for the Eastern District of California persuasively explained, in A.C. v. Griego, 2016 WL 5930592 (E.D. Cal.), why Plaintiffs in police misconduct cases should be allowed some Discovery before facing potential dismissal because they have not yet learned and pled sufficient specific instances to create a valid Monell pattern and practice:

> To allege a § 1983 claim against a city, a plaintiff must allege facts showing that the city had a custom or policy that caused the plaintiff's constitutional injury. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A "policy or custom" under Monell is a "longstanding practice ... which constitutes the 'standard operating procedure' of the local government entity." Ulrich v. City & Cty. of San Francisco, 308 F.3d 968, 984 (9th Cir. 2002) (internal citation omitted). "[T]he complaint must allege the policy, as well as its causal relationship to the constitutional injury, in sufficient detail." Hass v. Sacramento Cty. Sheriff's Dep't, No. 2:13-cv-01746, 2014 WL 1616440, at *5 (E.D. Cal. Apr. 18, 2014).
>
> **But a relaxed pleading standard may apply in limited circumstances. Allegations based on "information and belief" may be sufficient to establish a "causal connection between the existing or non-existing policies, procedures and practices and the harms [Plaintiffs] experienced" when "the facts that might demonstrate the causal connection—such as ... corrective actions taken or not taken—are not available to the pleading party [before] discovery."** Phillips v. Cty. of Fresno, No. 1:13-cv-0538, 2013 WL 6243278, at *10 (E.D. Cal. Dec. 3, 2013) (internal citations and quotation marks omitted). This is particularly true when a plaintiff raises failure to discipline or failure to train claims. See

Estate of Duran v. Chavez, No. 2:14-cv-02048, 2015 WL 8011685, at *9 (E.D. Cal. Dec. 7, 2015) (allowing plaintiffs' failure to supervise, investigate, or discipline claim survive defendants' motion to dismiss); Phillips, 2013 WL 6243278 at *10 ("find[ing] that dismissal of plaintiffs' claims for entity/supervisor liability is inappropriate at this stage of the proceeding").

Plaintiffs bring a Monell claim against the City of Fairfield ("City"). FAC ¶¶ 52-57. Defendants argue that Plaintiffs have not sufficiently pled facts showing that the City had a custom or policy that caused a constitutional injury. Mot. at 8-9. Plaintiffs respond that given the case's pre-discovery posture, it is no surprise they lack elaborate details to support their failure to discipline and inadequate training claims. Opp'n at 13.

Here, a relaxed pleading standard suffices. Plaintiffs' allegations based on "information and belief" parallel those found sufficient in Duran and Phillips. Plus, Plaintiffs have pled some facts. One officer allegedly yelled for Officer Hatzell to "wait wait wait," and another allegedly called him a "rookie." FAC ¶¶ 27, 33. Both implicate training or the lack thereof. **Also, most information needed to support inadequate training or failure to discipline claims is in Defendants' custody and not available to Plaintiffs before discovery. See Phillips, 2013 WL 6243278 at *11. Plaintiffs' FAC contains information "sufficient to supply notice to Defendants" about the kinds of "information they will need to provide to refute, if they can, Plaintiffs' allegations in a subsequent motion for summary judgment." Id. Because Plaintiffs have successfully stated a Monell claim, the Court denies Defendants' motion to dismiss Plaintiffs' Third Cause of Action against the City.**

(Emphasis added).

## IV.

## THE PLEASANTON POLICE DEPARTMENT HAS AN OMINOUS RECENT PATTERN AND PRACTICE OF MISCONDUCT INVOLVING EXCESSIVE USE OF FORCE AND WRONGFUL ARRESTS

The plaintiffs in the recent case John Bauer v. City of Pleasanton, No.19-04593-LB, set forth in their Second Amended Complaint ("Bauer SAC") an ominous litany of recent instances cases of Pleasanton police officers using excessive force in making arrests.  See paragraphs 36 to 42 of the Bauer SAC which is included as an exhibit to this Opposition Memorandum. Indeed, the victims of the police brutality died in those two cases, as well as in the Bauer case itself, making three deaths.

Plaintiff Ellen Williams was not killed by the Pleasanton police.  But she was physically brutalized, quite unnecessarily and excessively so as set forth in our Complaint and in more detail in the accompanying Declaration of Ms. Williams.   The common denominator between

her case and the Bauer three instances is not whether the victims were killed, but the pattern of brutal and excessive physical force.

The victims in the three Bauer cases also were said to be mentally challenged or disabled. Ellen Williams certainly is not in that disfavored category. But she is in the at least equally disfavored category, in a nearly all-White city, of being Black, which we contend is perceived by the Pleasanton police as a negative group characteristic relevantly similar to their perception of "retarded" people, as indeed they regard Blacks as being "retarded" as a group.

Magistrate Judge Beeler decided that the pattern and history pled in Bauer's SAC was sufficient to rule that his Monell policy-and-practices claim survives at the pleading stage.  See Order of June 23, 2020, Docket No. 47, at pp. 3-5, which also is an exhibit to this Opposition Our Monell claim should survive at the pleading stage based on the same history. There is no practical purpose in our having to file an amended complaint to add that material, the way Bauer did, and then have a second Motion to Dismiss as occurred in his case, when all the relevant information is being presented to the Court now.

We acknowledge that a year later, indeed earlier this month on June 2, 2021, Judge Beeler did eventually grant Summary Judgment against Bauer and in favor of Pleasanton on the Monell claim.   Docket No. 98, at pp. 26-30.  The briefing for that Motion contained extensive evidentiary submissions from discovery, as is standard on Summary Judgment Motions.

Just because Bauer and his attorneys were not able, after Discovery, to obtain sufficient evidence to convince Judge Beeler that the Monell policy-and-practices claim does not mean that Ellen Williams should not be allowed to try for herself.   Bauer was indeed represented by quality attorneys in the field of police misconduct.  But we have no way to know how thorough or complete was their discovery and investigation.

Regardless, though, Ellen Williams is entitled to her own opportunity to diligently look for other relevant cases that could help establish policy-and practices, and indeed to look for

evidence specifically relating to Ms. Williams' own case that might be probative. Among other things, the fact that our focus will be on evidence of racist actions or motive, which was not on Bauer's discovery agenda, means that we may find relevant pattern and practice evidence in that area which Bauer naturally had no reason to find.

V.

### ELLEN WILLIAMS HAS SPECIFIC EVIDCENCE OF RACIST ACTIONS AND MOTIVATIONS BY THE PLEASANTON POLICE OFFICERS

Defendants are correct that this case certainly contains an excessive use of force component, which is a federal Fourth Amendment claim. But Defendants are incorrect that it does not contain a racism component, which is a an equal protection claim under the Fifth and Fourteenth Amendments, as well a California state law claim under the Unruh Act (Civil Code Sec. 51.7).

Our Complaint does plead racism, but it does not include everything Ellen Williams has to say about racism by these Defendants. If the Court is inclined to grant the Motion to Dismiss because it believes our Complaint needs to contain that additional material, we certainly can and will provide it.

To demonstrate our bona fides, we are submitting with this Opposition a Declaration by Ellen Williams which expands upon the allegations in our Complaint, and makes more explicit the specific Racism misconduct. Here are excerpts from that Declaration:

> 10. After they handcuffed me and put me in the police car, Officer Emmet took my handbag from my attorney, searched my handbag and wallet, and took out my license and $1,000 in cash (she never returned the cash). About 10 or 15 minutes later, she came into the police car and said, "I could not find any criminal records under your name. It's highly unusual for people of your race to have no criminal records. Do you have another name other than your maiden name and married name?" I told her "no".
>
> 11. Then she said, "I'm going to go search your criminal records again". She then similarly told Officers Bradley and Boccasile: "Hey I couldn't find her criminal records, I am gonna go and search again." Officer Boccasile nodded to indicate agreement with that plan.

12. During this time, Officer Bradley and Boccasile started talking to me and wanted to know what was going on. I was very surprised to hear them ask because they confirmed to me that they just presumed that I am a criminal based on my race and beat me up without knowing the facts. When they asked me to tell them what happened, I explained to them and they both said, "now we understand why you are upset". Then Officers Bradley and Boccasile told me that my fate is in the hands of Officer Emmet and that I should beg and plead with her for mercy.

13. Several long minutes later, Officer Emmet came back and told Officers Bradley and Boccasile, "It's highly unusual for people like her but she has no criminal records. The only thing I could find is one traffic ticket". When she came inside the police car, I told Officer Emmet what had happened and that I would like to file a battery report against the two nurses, Ms. Welch Frangieh and Ms. Nitro.

14. Officer Emmet told me that she will prepare and file needed report. She then took me to jail. When she took me out of the car, she intentionally kept twisting my arms from the car to the jail even though I was handcuffed. When we entered the Dublin Jail, she demanded that I take off my shoes even though my shoes was not a style that could be used as a weapon and had a very small heel. There were women who were brought after me wearing long and thin high heels, which could be used as a weapon, but none of them were asked to take their shoes off. Officer Emmet, even though Dublin is not her jurisdiction, kept demanding that I take my shoes off. When I asked if I could have a slipper since the floor was dirty and there was a needle on the floor, she refused and became more aggressive, continuing to demand that I take my shoes off. The Dublin officers at the jail were watching her and did not want any part of it.

15. Eventually a lady saw Officer Emmet's aggressive behavior and went and brought me a pair of orange slippers. After Officer Emmet turned me over into the Dublin Police Officers custody, she would not leave. Then the booking officer asked why I was there and said, "you don't look like you belong here" and Officer Emmet stepped in and said, "She is defiant".

16. When the Dublin officer told me to call and text whomever I need to notify using my own phone, Officer Emmet grabbed my phone and ordered me that I am not allowed to send text and only allowed to make a voice phone call. The Dublin officer was looking at Officer Emmet in disbelief and told me, "Don't worry, we will make sure that you will be OK".

17. As the Dublin officer was about to take me to a holding cell, Officer Emmet said, "wait I need to search her hair to be sure she doesn't have any drugs hidden in her hair" and she inspected my hair. When she did not find anything, the Dublin Officer put me in the holding cell.

18. Despite Officer Emmet's order to send me to Santa Rita Jail, the Dublin Officers refused to send me there. They instead and left me in holding cell on the basis, "you are not a criminal, you won't survive in jail".

19. While I was placed in the holding cell, there was a young White girl in the cell who was brought in because she beat up her boyfriend and chocked him while he was flat on his back. There also was an Asian lady who was still wearing her four-inches high heels and who had been arrested because she hit the head and ear of her ex-husband with her cell phone after they left court following a child custody hearing. Neither of them were told to take their shoes off.

20. My bail was higher than the two ladies but I posted the required amount at approximately 8:00 p.m. However, the Dublin Jail officers told me that they could not release me because Officer Emmet had left strict instructions to check all 50 states for criminal records on me. It took the Dublin Jail almost 10 hours to search all 50 states and I was not released until approximately 5:00 the next morning.

## VI.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety. Alternatively, if the Court is inclined to grant the Motion as to particular portions of our Complaint, the Court should grant us leave to amend it.

Dated:  June 21, 2021                                  Respectfully submitted,

                                                       LAW OFFICES OF JAMES BRADEN

                                                       By:  _____/s/ James Braden_____

                                                       James Braden

                                                       Attorney for Plaintiff Ellen Williams