UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELLEN WILLIAMS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CITY OF PLEASANTON, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-08720-WHO<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 80 |

This case stems from plaintiff Ellen Williams's arrest on November 14, 2019, at a hospital in Pleasanton, California ("ValleyCare") where her husband was under treatment. First Amended Complaint ("FAC," Dkt. No. 77) ¶¶ 24, 30, 45, 52. In my September 2, 2021 Order, I dismissed various claims that Williams asserted against the City of Pleasanton defendants,[1] allowing Williams leave to amend her *Monell*, Ralph Act, Bane Act, and Fourteenth Amendment claims. September 2021 Order (Dkt. No. 63) at 7. I also dismissed claims that Williams asserted against the ValleyCare defendants,[2] allowing her leave to amend to state the basis for jurisdiction over her state law claims, and to amend her claims of battery, violation of the Ralph Act and Bane Act (requiring Williams to identify with specificity the acts each ValleyCare defendant took), and for malicious prosecution (requiring her to identify with specificity the acts each ValleyCare defendant took). *Id*. at 7-9.

Williams filed her FAC on November 1, 2021, naming three hospital entity defendants[3]

---

[1] The City of Pleasanton, the Pleasanton Police Department, and four Pleasanton police officers; Katie Emmet, Anthony Pittl, Barry Boccasile, and Michael Brady.

[2] Arianna Welch Frangieh, Anita Girard, Meghan Claire Ramsey, Dianne Del Rosario Estrada, Emily Nitro, and Franz Hibma, who were alleged to be nurses or doctors working at ValleyCare.

[3] The Hospital Committee of the Livermore-Pleasanton Areas, dba Stanford Health Care (FAC ¶ 10, "ValleyCare"); Stanford Health Care, dba Stanford Health Care (FAC ¶ 11, "SHC"); and

and dropping one of the prior-identified individual ValleyCare defendants.[4] The ValleyCare defendants again move to dismiss arguing that the reasserted battery claim fails against Frangieh and the ValleyCare Entities, the Ralph Act and Bane Act claims fail against all ValleyCare defendants, and the claim for malicious prosecution fails against all ValleyCare defendants. Dkt. No. 77. The motions are GRANTED, with the exception of the battery claims against Frangieh and Valley Care, for the reasons discussed below.

## I.     BATTERY

Williams reasserts her battery claim against Frangieh and against the three ValleyCare Entity defendants on a respondeat superior basis. Williams alleges that "[w]hen Defendant Frangieh was trying to come into Dr. Williams' room, Plaintiff closed the curtain and requested that she not be allowed in, because she quite rightly did not like how she had battered Dr. Williams by throwing a wipe at him. Plaintiff asked for a different nurse. At this time, Defendant Frangieh shoved Plaintiff inside the room through the curtain, meaning she violently put her hands on Plaintiff without her consent, which is a Battery. Plaintiff told her to stop being abusive and violent." FAC ¶ 48; *see also id*. ¶72 ("The criminal battery charges should have been against the two nurses, Frangieh and Nitro, for battering Dr. Williams with filthy wipes, and against Frangieh battery when she violently shoved Plaintiff.").

Defendants argue that Williams still fails to allege a battery claim against Frangieh because she does not allege that Frangieh touched Williams with "specific intent" to harm or offend and that Williams was harmed by the touching. Motion to Dismiss (MTD, Dkt. No. 80) at 7. That argument is rejected. Specific intent and harm are reasonably inferred from plaintiff's allegations that Frengieh intentionally and violently shoved Williams. That is sufficient at this juncture.

Defendants do not contend that ValleyCare cannot be liable under a respondeat superior theory, and admit that the hospital where the incident took place is owned and operated by the

---

Valley Care Medical Foundation (FAC ¶ 12, "ValleyCare Foundation"), collectively the ValleyCare Entities.

[4] Franz Hibma is no longer identified as a defendant.

1   Hospital Committee of the Livermore-Pleasanton Areas (referred to as "ValleyCare").  MTD at 8,

2   Request for Judicial Notice ("RJN") Exs. 6, 7, 7.1.  Defendants instead argue that SHC and

3   ValleyCare Foundation cannot be liable for Frangieh's conduct as those entities did not operate the

4   hospital or employ Frangieh.

5         Defendants submit public documents for judicial notice showing that SHC does business in

6   Palo Alto and not in Alameda County, and that while there is a fictitious business entity in

7   Alameda County dba "Stanford Health Care-Valleycare," that entity is associated only with

8   defendant ValleyCare.  RJN, Exs. 1-2.  Defendants also assert that ValleyCare Foundation does

9   not own or operate the hospital where the incident occurred and instead is a nonprofit public

10  benefit corporation that operates one or more clinics, not the ValleyCare hospital.  MTD at 8, RJN

11  Exs. 5, 5.1.  In response, plaintiff asserts she named the three entities in good faith and contends

12  that nothing in the judicially noticeable documents proves that SHC or ValleyCare Foundation

13  played "no role" in the operation or management of the hospital where the incident took place.

14  However, based up on the contents of the judicially noticeable documents, I accept defendants'

15  argument and DISMISS without prejudice SHC and ValleyCare Foundation.[5]

16  **II.   RALPH ACT AND BANE ACT**

17        All of the ValleyCare defendants are named as defendants under Williams's repleaded

18  Ralph Act and Bane Act claims.  Defendants move to dismiss the Ralph Act claim (Cal. Civ. Code

19  § 51.7), arguing that Williams still has not identified sufficient acts of violence or threatened

20  violence by each of the named defendants or that those acts were taken because of her race, gender

21  or other protected classification.  They contend that Williams, at most, alleges that the individual

22  ValleyCare defendants "created the conditions and circumstances" that led to Williams's arrest,

23  but that is insufficient.

---

[5] There is some dispute between the parties about whether ValleyCare Medical Center is an entity. *See* Reply at 7.  In any event, the entity that defendants admit owns and operates the hospital where the events took place and that presumably employs some of all of the individual defendants – the Hospital Committee of the Livermore-Pleasanton Areas – is named as a defendant and referred to as ValleyCare herein.  If discovery shows that another entity operated the hospital or employed any remaining individual defendants, plaintiff may amend to name the appropriate entity defendant.

3

In response, Williams points to paragraphs 32 through 56 of the FAC where she identifies facts in support of the "campaign of racist abuse" these defendants allegedly committed against her and her husband. Williams describes the "theme" of the acts of the ValleyCare and Pleasanton defendants as "Racism and Racial Discrimination," alleging that once the ValleyCare employees learned that Williams is Black, they treated her and her husband "like criminals." FAC ¶¶ 32, 34. She alleges generally, that individuals not named as defendants engaged in the following conduct: a doctor failed to see her husband and then performed an unconsented and risky surgery on her husband because she is a Black woman; that her husband received substandard care because his wife is Black; that a doctor (who is not a defendant) noted in her husband's chart that his wife is "AA" standing for African American to "alert" staff that they should be wary because the "wife is aggressive and dangerous because she is Black"; assuming that Williams' husband was on inferior medical insurance because his wife is black; the individual ValleyCare defendants called the police and "encouraged" them to arrest Williams because she was black. FAC ¶¶ 32, 34, 35, 36, 37, 38-39, 42.

The specific allegations against the ValleyCare defendants named in this case are:

- Defendant Girard "demanded" Williams come to a meeting at the hospital without adequate notice and then humiliated and laughed at Williams' husband leaving him soaked in urine and feces. FAC ¶ 43. When Girard and others were not able to convince Williams to send her husband to a hospice, Girard authorized the calling of Pleasanton Police Department to intimidate plaintiff; and after Williams was arrested put her husband in "solitary confinement." *Id*. ¶¶ 49, 55.
- Defendant Ramsey, called plaintiff four or five times "demanding she leave work to attend a meeting" at ValleyCare (FAC ¶ 44); Ramsey joked and laughed outside Williams' husband room where he was soaked in urine, *id*. ¶ 45; Ramsey pressured Williams and her husband to sign hospice transfer paperwork and when Williams refused Ramsey was part of the group who went to call the Pleasanton Police Department; and after Williams was arrested put her husband in "solitary confinement." *Id*. ¶¶ 47, 49, 55.
- Defendant Frangieh, in Williams' presence, threw a used wipe soaked in urine on

4

Williams' husband's face and told him to "clean himself up" (FAC ¶ 46) and then shoved Williams committing a battery. *Id.* ¶ 48.

- Defendant Nitro threw a clean wipe at Williams' husband, in plaintiff's presence, and told him to clean himself up. *Id.* ¶ 47.
- Defendant Estrada pressured Williams and her husband to sign hospice transfer paperwork (*id.* ¶ 47); she became "verbally aggressive" and when not able to convince Williams or her husband to sign the hospice paperwork, was part of the group who went to call the Pleasanton police. *Id.* ¶ 49.

Collectively, the individual defendants are alleged to have "created and engineered" the situation which led to her beating and arrest by the police because of "the deliberate and malicious misconduct of the ValleyCare defendants Girard, Ramsey, Nitro, Frangieh, and Estrada. They wrongly summoned the Pleasanton police in the first place. They lied to the Pleasanton police by telling them Plaintiff was a dangerous violent criminal. This caused the Pleasanton police to take the unusual step of sending four officers in four police cars." *Id.* ¶ 54.

With specific respect to the Ralph Act claim,[6] Williams alleges based on the conduct outlined above, the "individual ValleyCare defendants are responsible for arranging, engineering, and creating the conditions and circumstances which led, as they hoped and anticipated would occur, to the Pleasanton police being called, and those police then inflicting a brutal beating and racist harassment on Plaintiff. Defendants Girard and Ramsey were the leaders of this plan and campaign at ValleyCare. They were assisted by Defendants Frangieh, Nitro, and Estrada." *Id.* ¶ 99.

None of the facts alleged, however, shows that violent acts or threats of violence (except perhaps the Frangieh battery) were made by the ValleyCare defendants against Williams. Under section 51.7, "[t]he test is: 'would a reasonable person, standing in the shoes of the plaintiff, have been intimidated by the actions of the defendant and have perceived a threat of violence?'"

---

[6] Section 51.7 of the California Civil Code ("Ralph Act") provides that "[a]ll persons . . . have the right to be free from any violence, or intimidation by threat of violence committed against their persons or property" on the basis of a wide variety of protected characteristics, including race, gender and religion. Cal. Civ. Code §§ 51.7, 51(b).

*Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1289 (9th Cir. 2001) (citing Judge Donna J. Hitchens & Robert D. Links, California Civil Practice: Civil Rights Litigation § 3:4). The only violence that Williams herself points to as supporting her Ralph Act claim is the "police then inflicting a brutal beating and racist harassment on Plaintiff." FAC ¶ 99. Assuming the individual ValleyCare defendants intended and wanted the police to come and arrest Williams, the fact remains that it was the police that allegedly inflicted violence and racist harassment on Williams.

Plaintiff nonetheless argues that the ValleyCare individuals can be liable for aiding, inciting and conspiring in the excessive force used by the police in violation of the Ralph Act and the deprivation of her rights under the Bane Act. *See Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1290 (9th Cir. 2001) (finding defendant could be liable for "'aid[ing], incit[ing], or conspir[ing] in the denial' of Winarto's rights under Section 51.7. Cal. Civ. Code § 52(b).").[7] The only allegations that come close to showing how the ValleyCare defendants aided or abetted the violence inflicted on Williams are that unspecified individual ValleyCare defendants "lied to the Pleasanton police by telling them Plaintiff was a dangerous violent criminal. This caused the Pleasanton police to take the unusual step of sending four officers in four police cars." FAC ¶ 54.

For the Bane Act claim, plaintiff asserts only that the "acts and omissions" of the ValleyCare defendants were within the course and scope of their employment and "caused" plaintiff to suffer violation of her "constitutional rights." FAC ¶¶ 104, 106.[8] The only rights

---

[7] Defendants question whether *Winarto*, which considered Ralph and Bane Act claims collectively, can be read to impose aiding and abetting liability. California Civil Code § 52(b) provides that, "Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable." Therefore, aiding and abetting liability under the Ralph Act is provided by statute and, under *Winarto*, applicable to Bane Act claims. The case defendants rely on, *Jones v. Lodge at Torrey Pines P'ship*, 42 Cal. 4th 1158, 1171 (2008), is inapposite. The *Jones* court did not consider the Ralph or Bane Act and addressed a different question (whether individuals could be held liable for wage and hour claims in addition to a responsible employer based on an aiding and abetting theory).

[8] The Bane Act "prohibits interference or attempted interference with a person's rights under federal or California law by 'threats, intimidation, or coercion.'" *Wyrzykowski v. Cty. of Marin*, No. 3:14-cv-03825-LB, 2015 WL 3613645, at *11 (N.D. Cal. Jun. 9, 2015) (quoting Cal. Civ. Code § 52.1(a)). "The statutory framework of section 52.1 indicates that the Legislature meant the

Williams identifies in the FAC as having been violated are the constitutional rights asserted under the Section 1983 claim against the Pleasanton defendants. The violation of those constitutional rights relate to the manner of her arrest by the Pleasanton defendants and their harassment during her confinement. FAC ¶ 77. Presumably, plaintiff's theory is that the ValleyCare individual defendants are liable under the Bane Act – as they are theoretically liable under the Ralph Act – for aiding, inciting, and ultimately causing the police to use unconstitutional violence in her arrest because unspecified ValleyCare individuals falsely told the police that Williams was a "dangerous violent criminal."[9]

Plaintiff's Ralph Act and Bane Act claims fail against the ValleyCare defendants. In addition to the remaining pleading failures – Williams still does not identify with specificity the defendants who purportedly lied to the Pleasanton police or substantiate that claim with anything other than speculation – plaintiff cites no authority that by calling the police and providing false information about the dangerousness of a suspect, the persons placing that call could be liable under the Ralph Act (for "threats of violence" based on race) or liable under the Bane Act (for interference with a person's rights under federal or California law) due to the violence allegedly inflicted by the police officers. The fundamental problem with Williams's claims is that how the police responded to the call (*e.g.*, number of police or police cars sent) and how the arrest unfolded (whether with expected force or excessive force) were factors outside of the control of the ValleyCare defendants.[10] Absent authority extending Ralph Act or Bane Act liability in similar circumstances, the Ralph and Bane Act claims must be dismissed.

In her opposition, plaintiff appears to assert that the ValleyCare defendants violated the

---

statute to address interference with constitutional rights involving more egregious conduct than mere negligence." *Shoyoye v. Cty. of Los Angeles*, 203 Cal. App. 4th 947, 958 (2012).

[9] As Williams appears to acknowledge, the mere fact that she may have been falsely or mistakenly arrested is not enough to state a claim under either the Ralph Act or Bane Act. *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 69 (2015), as modified on denial of reh'g (Mar. 6, 2015) ("we conclude a wrongful arrest or detention, without more, does not satisfy both elements of section 52.1").

[10] The FAC is devoid of any allegation that any ValleyCare defendant incited or encouraged the police offices to use any type of specific force during their confrontation with Williams at the hospital.

7

1   Ralph or Bane Acts through other "direct" or indirect acts that infringed unidentified and

2   unmentioned rights. Oppo. at 5-6. However, no rights other than Williams' constitutional rights

3   in Paragraph ¶ 77 of the FAC have been identified and the only violence or threats of violence

4   underlying the Ralph Act and Bane Act claims that she identifies in her FAC are the violent acts

5   of the police in arresting her. FAC ¶¶ 99, 104, 106-107. In my September 2021 Order, Williams

6   was specifically directed to identify the rights she alleges were violated by specific acts of

7   identified defendants. September 2021 Order at 8. Because there is no legal basis to allow these

8   claims to proceed based on the allegedly violent conduct of the arresting officers, these claims are

9   DISMISSED WITH PREJUDICE.

## III.     MALICIOUS PROSECUTION

The ValleyCare defendants move again to dismiss the malicious prosecution claim. In my September 2021 Order, I identified the pleadings requirements for a malicious prosecution claim under California law and directed plaintiff to "specifically allege the acts she believes that each [ValleyCare] Defendant took to 'direct' the criminal prosecution, facts showing that defendants lacked probable cause to do so, and facts plausibly showing these defendants were acting with malice. She must also allege facts that plausibly show how each [ValleyCare] Defendant 'sought out' authorities and falsely reported specific facts indicating Williams had committed a crime." September 2021 Order at 8-9.[11]

In the FAC, Williams bases her malicious prosecution claim on defendants' collective conduct in communicating unspecified information to the "City Attorney" or District Attorney that led to the filing of the criminal complaint. Williams alleges that:

> 70. Officer Emmet, who knowingly filed a false report on behalf of Defendant Frangieh, forwarded the complaint against Plaintiff to the

---

[11] *See Sheldon Appel Co. v. Albert & Oliker*, 47 Cal.3d 863, 871 (1989) ("Under the governing authorities, in order to establish a cause of action for malicious prosecution of either a criminal or civil proceeding, a plaintiff must demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].'"); *Greene v. Bank of America*, 216 Cal.App.4th 454, 463-464 (2013) ("Cases dealing with actions for malicious prosecution against private persons require that the defendant has at least sought out the police or prosecutorial authorities and falsely reported facts to them indicating that plaintiff has committed a crime.") (internal quotation omitted).

8

> City Attorney's office. In addition, the ValleyCare entity defendants, acting through at least defendant Frangieh, and we are informed and believe also through defendants Girard, Ramsey, Nitro, and Estrada, sent correspondence and made phone calls urging and encouraging the City Attorney to file a formal criminal case against Plaintiff, and then to pursue that case.
>
> 71. Deputy District Attorney Sharon Carney on December 13, 2019, implemented Emmet's and ValleyCare's and Frangieh's outrageous request by filing a formal criminal Complaint against Plaintiff. A copy of that Complaint is attached as Exhibit "A"
>
> …
>
> 73.[] Deputy District Attorney Charney refused to dismiss the charges unless Plaintiff would plead guilty (or no contest) to the offenses and accept probation. Plaintiff would supposedly do this despite that defendant Frangieh, even according to the false police report made by Officer Emmett, admitted she was not hurt and she did not need medical attention.
>
> . . .
>
> 75. Eventually, a year later, the After almost a year of refusing to dismiss the charges, the prosecutor decided to drop the charges "in the interest of justice'.
>
> . . .
>
> 109. Defendants Frangieh, Girard, Ramsey, Estrada, and Nitro, all gave false information about Plaintiff to the police officer defendants, which resulted in the police arresting and imprisoning Plaintiff for alleged criminal acts.
>
> 110. Thereafter, on information and belief, these same five individual Defendants communicated by voice phone, email, and U.S. Mail to Deputy District Attorney Sharon Carney, and others in her office, to urge and encourage her to file a formal criminal case against Plaintiff. Approximately one month after the incident, Deputy District Attorney did file that case, charging Plaintiff with two crimes. *See* Exhibit A.

FAC, Dkt. No. 77.

The ValleyCare defendants argue that the malicious prosecution claim fails as a matter of law because plaintiff offers only speculation in support of the assertion that defendants Frangieh, Girard, Ramsey, Nitro, and Estrada "sent correspondence and made phone calls urging and encouraging the City Attorney to file a formal criminal case against Plaintiff." FAC ¶¶ 70, 110. As noted in my prior order, each defendant must be alleged to have been "actively instrumental in causing the prosecution" – here the charge for battery against Frangieh, FAC Ex. A – by falsely reporting facts to the police or prosecutorial authorities that led to the actual charge. *Greene v.*

9

*Bank of America*, 216 Cal.App.4th 454, 463-464 (2013). Any alleged lies plaintiffs told to police regarding Williams' being a violent and dangerous criminal that led to the police arriving at the hospital are, therefore, not connected to the eventual charge; the proper focus is on the post-incident conduct by the ValleyCare defendants that could create grounds for a malicious prosecution claims based on the charges actually filed. *See* Opposition (Dkt. No. 81) at 8 (agreeing that the arrest is not the salient issue, but the focus should be "the conduct subsequently pushing the District Attorney to file the formal criminal charges").

The FAC contains no facts and only one assertion regarding the post-incident acts of the ValleyCare defendants: "at least defendant Frangieh, and we are informed and believe also through defendants Girard, Ramsey, Nitro, and Estrada, sent correspondence and made phone calls urging and encouraging the City Attorney to file a formal criminal case against Plaintiff." FAC ¶ 70. Plaintiff makes no attempt to identify the allegedly false information provided by any of these defendants regarding the alleged battery of Frangieh by Williams.[12] Defendants note that Williams admitted in her prior complaint that there was disputed evidence regarding Williams' touching of Frangieh, indicating that the battery claim was supported by probable cause. *Id*. ¶ 41 ("This included defendant nurse Arianna Welch Frangieh alleging that Plaintiff used her shoulder to push Ms. Frangieh's shoulder so that Frangieh would get out of the way. This was a completely false allegation. In a medical record prepared by another nurse, that nurse recorded only that a curtain was closed and that Frangieh was touched in the process. No indication was put in the record about Frangieh being touched intentionally. Frangieh later contradicted the witness in another report and wrote that Plaintiff 'shoved her through the curtain'. She told the police she was not injured.").

At base, plaintiff still fails to allege in her operative complaint what allegedly false information that each specific ValleyCare defendant provided to the District Attorney in order to wrongly convince the District Attorney to include the battery charge in the criminal complaint.

---

[12] There is nothing in the FAC to suggest that Williams believed any ValleyCare defendants provided post-incident false information in support of the resisting arrest charge. As defendants note in their Reply, in a prior version of Williams' complaint, Williams essentially admits that she resisted the officers' request that she not be at the hospital. *See* Dkt. No. 17, ¶¶ 42-43.

1 Nor does plaintiff identify in her opposition what those additional fact might be.  The malicious
2 prosecution claim, therefore, is DISMISSED.  Because in my prior Order I did not direct plaintiff
3 to identify the allegedly false information provided to the District Attorney and by whom,
4 although that should have been self-evident, I will provide plaintiff will one last chance to amend
5 this claim.

## CONCLUSION

Defendants motion to dismiss the battery claim is GRANTED in part as to SHC and ValleyCare Foundation and DENIED as to Frangieh and ValleyCare.  The Ralph Act and Bane Act claims are DISMISSED with prejudice.  The Malicious Prosecution claim is DISMISSED with leave to amend within 20 days of this Order.

**IT IS SO ORDERED.**

Dated: March 7, 2022



William H. Orrick
United States District Judge

11