# ZENERE COWDEN & STODDARD APC

| | |
|---|---|
| 2005 De La Cruz, Suite 240 | ADAM M. STODDARD |
| Santa Clara, CA 95050 | astoddard@zcslawfirm.com |
| Telephone: (408) 430-3551 | Direct: (408) 475-5575 |

May 19, 2023

*VIA E-File*

The Honorable William H. Orrick
United States District Court
Northern District of California
450 Golden Gate Avenue,
San Francisco, CA 94102

    Re: Williams, Ellen v. City of Pleasanton, et al
       Case No.: 3:20-CV-08720-WHO

To the Honorable William H. Orrick:

    The Hospital Defendants and Plaintiff submit this discovery statement pursuant to your Honor's Standing Order for Civil Cases, 4, Discovery Disputes.

## PLAINTIFF'S STATEMENT

    As Defendants correctly say below, they sent their detailed meet-and-confer letter about numerous questions that Michael Williams and Sokea Kiep did not answer at their recent depositions at 1:02 PM yesterday, Thursday, May 18. They obviously were not at that time aware of Rule 37-3 which they interpret as requiring a Joint Discovery Letter about this issue to be submitted by no later than today, May 19.  Indeed, Mr. Stoddard admitted this during meet-and-and-confer, and in any event his own letter generously gave us until next week to get back to him.

    Mr. Stoddard apparently realized only this morning that he had, as he views it, made a mistake by failing to adhere to the putative timing rule of Rule 37-3.  He thus contacted us to pursue substantive meet-and-confer right now, immediately, this afternoon.

     We told him, quite correctly, that the issues he raised yesterday are complex and detailed, that we had not expected to have to deal with them by today given that he gave us until next week, that we have not in fact done so, and that we cannot possibly do so.  And that we should not have to because he was not aware until this morning of the Rule as he interprets it.

<div style="border: 1px solid black;">
ZENERE COWDEN & STODDARD APC
2005 De La Cruz Blvd., Suite 240, Santa Clara, CA 95050
</div>

*Re: Williams, Ellen v. City of Pleasanton*
May 19, 2023
P a g e  **2**

Our position is that Mr. Stoddard's interpretation of the Rule is not correct. It refers to "motions" about discovery having to be brought within seven days after "discovery cut-off". But as Mr. Stoddard notes, Judge Orrick does not entertain Discovery "motions", but rather requires Joint Discovery Letters. The Rule says nothing about those.

In the absence of Judge Orrick issuing an Order that Rule 37-3 does apply, we are entitled to believe that it does not. If the Judge says we are mistaken about that, then it nevertheless is inappropriate for us to be required to prepare a substantive "meet-and-confer" response within merely one single day after being specifically told by our opponent that we have more time.

Accordingly, we suggest that the last day for the parties to submit a Joint Discovery Letter if they are unable to resolve their substantive differences by set by the Court as two weeks from today, i.e. June 2, 203.

## **DEFENDANTS' STATEMENT**

Defendants took the deposition of Plaintiff's husband, Dr. Williams, and Sokea Kiep, R.N. (a nurse who works at Dr. Williams medical clinic, the Northern California Cancer Center "NCCC", whom Plaintiff has identified as a witness in discovery and her initial disclosure). The depositions took place on May 5, 2023; however, Defendants had to wait until they received the deposition transcripts in order to properly meet and confer with Plaintiff. Those transcripts were received on or about May 16, 2023, and on May 18, 2023, Defendants served a meet and confer letter to Plaintiff's counsel requesting to speak about the letter the following week. On May 19, 2023, Defense counsel confirmed that pursuant to Local Rule 37-3, discovery disputes should be brought before the Court within 7 days following close of discovery. Fact discovery closed on May 12, 2023; therefore, out of an abundance of caution, Defense counsel attempted to expedite the meet and confer process and discuss the discovery dispute with Plaintiff's counsel on May 19, 2023. Defense counsel spoke with Ms. Sabharwal for 19 minutes over the phone, then had a separate telephone call with Ms. Sabharwal and Mr. Braden for approximately 15 minutes. The parties disagreed whether Local Rule 37-3 applied in this instance, given that Judge Orrick's standing orders do not allow discovery motions but rather requires joint discovery letters. Defense counsel attempted to determine whether Plaintiff would agree to re-produce her witnesses, Dr. Williams and Ms. Kiep, for further deposition given their refusal to answer a number of questions at deposition. Plaintiff's counsel would not confirm one way or the other.

Dr. Williams and Ms. Kiep refused to answer a number of questions, even after Ms. Sabharwal instructed them to answer. They both should be produced for a second deposition at the expense of Plaintiff. The transcripts from each of these depositions can be provided to the Court upon request.

<div style="border:1px solid">
ZENERE COWDEN & STODDARD APC
2005 De La Cruz Blvd., Suite 240, Santa Clara, CA 95050
</div>

*Re: Williams, Ellen v. City of Pleasanton*
May 19, 2023
P a g e 3

**Dr. Williams:**

I asked Dr. Williams whether he had any information regarding plaintiff's damages, he declined to answer. (80:9-14; 81:21-82:10) I asked Dr. Williams about Plaintiff's shoulder pain and whether he believed it had anything to do with being touched through the curtain (alleged battery claim) and he declined to answer this question. (82:12-22) I asked Dr. Williams whether he knew who Nakia Keeler was, and he declined to answer that question. (82:25-83:1) I asked Dr. Williams whether he had ever been accused of groping or fondling patients, and he declined to answer that question. (83:2-8) I asked Dr. Williams if he ever spoke to the Modesto Police Department on July 10, 2018 and he declined to answer the question, despite Ms. Sabharwal allowing the question to proceed. (83:13-84:16) I showed Dr. Williams the Modesto Police Department Police Report from the July 10, 2018 police investigation and he refused to answer any questions about it. (83:20-85:25) I also showed Dr. Williams text messages that have been produced in this case, and that the Court has already ruled were not privileged, and could be used in this case. Dr. Williams refused to answer any questions about those. (86:5-87:10). Dr. Williams even refused to answer questions about who Jonathan Rui is and whether he ever worked for him. (87:11-15) He refused to answer questions about Yesnia Pena (Osborne) (87:16-89:2) He refused to answer questions about the process for referring Plaintiff for imaging studies. (126:2-22) He refused to answer questions about whether he and Plaintiff had marital problems after the incident. (128:18-129:21) He wouldn't answer questions about Plaintiff's weight. (131:11-17) He refused to answer questions about whether Plaintiff has seen any doctors for shoulder pain, had imaging studies for her shoulder, taken medication for her shoulder, had any surgical recommendations for her shoulder, whether he made any such recommendations, or if Dr. Roland ever physically examined Plaintiff. (134:25-135:21)

Dr. Williams was never instructed by counsel not to answer any of these questions. There was no privilege asserted that would prevent Dr. Williams from answering these questions. If Plaintiff will not agree to produce Dr. Williams for a second session so that he can answer these questions, and any reasonable follow up, and pay the additional costs for a second deposition, then the Court should order them to do so.

**Sokea Kiep:**

Ms. Kiep was asked who at the NCCC is allowed to refer patients for diagnostic studies and she refused to answer the question. (50:24-51:13) She was asked if she was aware whether Dr. Williams referred Plaintiff for diagnostic studies, and she refused to answer that question. (51:18-20) She was asked whether she was aware if it was permissible for Dr. Williams to refer Plaintiff for diagnostic studies and she refused to answer this question. (52:8-11) She refused to answer questions regarding the alleged sexual assault involving Dr. Williams. (55:1-5) She refused to answer the question about whether she was aware that Yesenia Pena was terminated from NCCC in 2018. (56:9-14) She refused to answer questions about bonus schedules at NCCC despite Ms. Sabharwal telling her she could. (58:1-19) Ms. Kiep would not answer questions about whether she retained Ms. Sabharwal or Mr. Braden to represent her for this case or if she has paid anything

ZENERE COWDEN & STODDARD APC
2005 De La Cruz Blvd., Suite 240, Santa Clara, CA 95050

*Re: Williams, Ellen v. City of Pleasanton*
May 19, 2023
P a g e  **4**

to either of you for representation. (60:1-9) Despite that, she refused to answer a question about whether Mr. Braden told her what to write in a derogatory email she sent to me, even after Ms. Sabharwal told her she could answer the question. (41:11-18) Ms. Kiep refused to answer the question about how much she has been paid to care for Dr. Williams and Plaintiff when she went to their house over the weekends. (62:6-11) She refused to answer questions about how she was compensated for assisting Plaintiff over the weekends or even providing an estimate about how much she was compensated. (63:3-25; 65:19-66:2; 69:6-10; 77:13-15) Ms. Kiep sent a disparaging email to me prior to her deposition, and I asked her questions about the content of that email, and she refused to answer questions. (74:13-75:12) She refused to answer questions about how many hours a week she worked at NCCC. (78:23-25)

      Ms. Kiep was never instructed by counsel not to answer any of these questions. There was no privilege asserted that would prevent Ms. Kiep from answering these questions. If Plaintiff will not agree to produce Ms. Kiep for a second session so that she can answer these questions, and any reasonable follow up, and pay the additional costs for a second deposition, then the Court should order them to do so.

Respectfully Submitted,

Adam M. Stoddard
Attorney for the Hospital Defendants